THE STATE OF OHIO, APPELLEE, *v.* CARMICHAEL, APPELLANT.

[Cite as State v. Carmichael (1973), 35 Ohio St. 2d 1.]

(No. 72-871—Decided June 27, 1973.)

2

*Mr. George C. Smith*, prosecuting attorney, and *Mr. Miles C. Durfey*, for appellee.

*Mr. Willis E. Wolfe* and *Mr. Richard S. Donahey*, for appellant.

CELEBREZZE, J. The appellant in this cause directs the full thrust of his argument at the alleged use of hearsay evidence in the report from the Ohio Youth Commission Juvenile Diagnostic Center. While it is true that the psychiatrists and psychologists did not appear to testify concerning their examinations of Charles E. Carmichael, it is equally true that they were never called, nor was any ef-

fort made to call them by defense counsel, even though counsel had access to those documents for more than two months prior to the hearing. Nor did counsel, if he intended to make an issue of his client's "amenability to care or rehabilitation" in a children's facility, call any witnesses or even indicate to the court that he had investigated or had any knowledge of testimony relevant to this issue, or would investigate it if permitted.

The issue before the Juvenile Court at the time was the transfer of the accused from its jurisdiction under R. C. 2151.26.

R. C. 2151.26, at the time in question, read as follows:

"(A) After a complaint has been filed alleging that a child is delinquent by reason of having committed an act which would constitute a felony if committed by an adult, the court at a hearing may, before hearing the complaint on its merits, transfer the case for criminal prosecution to the appropriate court having jurisdiction of the offense, after making, in order, the following determinations:

"(1) The child was fifteen or more years of age at the time of the conduct charged;

"(2) There is probable cause to believe that the child committed the act alleged;

"(3) After an investigation including a mental and physical examination of such child made by the Ohio Youth Commission, a public or private agency, or a person qualified to make such examination, that there are reasonable grounds to believe that:

"(a) He is not committable to an institution for the mentally retarded or mentally ill;

"(b) He is not amenable to care or rehabilitation in any facility designed for the care, supervision, and rehabilitation of delinquent children;

"(c) The safety of the community requires that he be placed under legal restraint, including, if necessary, for the period extending beyond his majority.

"(B) Notice in writing of the time, place, and purpose of such hearing shall be given to his parents, guardian, or other custodian and his counsel at least three days prior to the hearing.

"(C) No child, either before or after reaching eighteen years of age, shall be prosecuted as an adult for an offense committed prior to becoming eighteen unless the case has been transferred as provided in this section. Any prosecution that is had in a criminal court on the mistaken belief that the child was over eighteen years of age at the time of the commission of the offense shall be deemed a nullity and the child shall not be considered to have been in jeopardy on the offense.

"(D) Upon such transfer the juvenile court shall state the reasons therefor and order such child to enter into a recognizance with good and sufficient surety for his appearance before the appropriate court for such disposition as such court is authorized to make for a like act committed by an adult. Such transfer terminates the jurisdiction of the juvenile court with respect to the delinquent acts alleged in the complaint."

There is no complaint concerning error with respect to the hearing court's procedure until we arrive at paragraph (3) above.

Counsel for Carmichael had no objection to the referral nor apparently to anything contained in the reports. The objection was to the introduction of the report upon the basis of hearsay. After a careful analysis of the reports incorporated in the exhibit, the hearing court made the following statement before reviewing the exhibit:

"The Court: The court's is of the opinion that the statute requires that an investigation be made * * *. This, of course, however does not limit your right to call or cross-examine all of those persons who have submitted such a report * * * now an investigation is certainly somewhat different than.testimony as such and if the Legislature intended that if psychiatrists or sociologists had to appear in court, this being in the nature of a preliminary hearing and this being for the benefit of the court to determine whether or not an individual should stand trial as an adult or as a child, it's an aid to the court in making that determination and much similar as other investigations that a court makes in making dispositions. So, I think that this is where we deviate from that normal channel of testimony

that counsel's accustomed to. That is, the proving of innocence or guilt as such in which the court certainly wouldn't admit hearsay testimony and would not permit letters or documents of examinations to be entered into the record that would require the verbal testimony of that witness. However, I once again want to say that as part of the defense of the question as to whether or not this young man has received a proper physical and mental examination or if there is any question about the findings that have been made or the conclusions that have been recommended or reached by the persons making the examination, counsel for the defense does have the right and will have the right in the defense of this hearing to call those persons as and for cross-examination. * * *''

Counsel for Carmichael correctly argues that ''the court must find that he [juvenile] is not committable to an institution for the mentally ill and that he is not amenable to rehabilitation in a facility for care of juveniles.'' However, the test the court is to apply under the statute is whether ''there are reasonable grounds to believe that * * *.'' Thus, the ''investigation'' is not required to show that the child *cannot* be rehabilitated as a juvenile but only that there are reasonable grounds to believe that he cannot be rehabilitated.

Counsel for appellant cite the case of *Kent* v. *United States* (1966), 383 U. S. 541, which deals primarily with the right to a ''hearing'' and ''the waiver of jurisdiction,'' and to the assistance of counsel and counsel's access to the juvenile's social records. In the *Kent* case, jurisdiction of the Juvenile Court was waived by that forum without a hearing, although it was in the court's journal that a hearing had been held. In the case at bar, there is no such allegation. Nor is there any question concerning the availability of any and all records and reports concerning the accused. This reviewing court cannot say that Carmichael was denied any of the rights enunciated in the *Kent* case.

Counsel relies on the case of *Pointer* v. *Texas* (1965), 380 U. S. 400. In that case, the accused was convicted after trial in a state court by the use of a transcript of testimony

taken at a preliminary hearing, wherein the accused was not represented by counsel and there was no cross-examination of the complaining witness whose testimony was transcribed and read.

A thorough search of the record in this case fails to disclose facts which would make the *Pointer* decision relevant here.

Historically, juvenile courts were established for the purpose of removing young people from criminal influence by creating a type of children's clinic. In such courts, the scourge and stigma of criminal types, and even criminal lawyers, were excluded. In that enlightened atmosphere there was no right to a jury; witnesses did not take an oath to tell the truth; no one had a right to counsel; no crimes, and therefore no bail, was involved; and rules of evidence were of no concern. The beneficiary of this utopian scheme was the child who, the reformers said, would readily see the error of his ways through his treatment in a "civil," rather than a "criminal," proceeding. Then came the case of *In re Gault* (1967), 387 U. S. 1, when suddenly the juvenile proceeding took on some of the aspects of a criminal prosecution. It is worthy of note in passing that the *Gault* "conviction" was on the "admissions" of the accused. And aside from these unrecorded "admissions" there was nothing on which a judgment or finding might be based. There was no sworn testimony. Finally, and perhaps most important, is the fact that the *Gault* case was at the adjudicatory level. Such is not the stage of the proceedings on review here. We are in complete agreement that at the adjudicatory stage the use of clearly incompetent evidence to prove a youth's involvement is not justifiable. See *In re Agler* (1969), 19 Ohio St. 2d 70.

Counsel for appellee cite the case of *In re Winship* (1970), 397 U. S. 358, for the purpose of showing the different degree of proof required at the adjudicatory stage of a juvenile proceeding in comparison with other stages. In the *Winship* case, the United States Supreme Court held that the required degree of proof in a juvenile proceeding was "beyond a reasonable doubt."

8

Mr. Justice Brennan observed, at page 366:

"Nor do we perceive any merit in the argument that to afford juveniles the protection of proof beyond a reasonable doubt would risk destruction of beneficial aspects of the juvenile process. Use of the reasonable doubt standard during the adjudicatory hearing will not disturb New York's policies that a finding that a child has violated a criminal law does not constitute a criminal conviction, that such a finding does not deprive the child of his civil rights, and that juvenile proceedings are confidential. Nor will there be any effect on the informality, flexibility, or speed of the hearing at which the factfinding takes place. And the opportunity during the post-adjudicatory or dispositional hearing for a wide-ranging review of the child's social history and for his individualized treatment will remain unimpaired. *Similarly, there will be no effect on the procedures distinctive to juvenile proceedings that are employed prior to the adjudicatory hearing.*" (Emphasis added.)

A hearing under the provisions of R. C. 2151.26 is clearly a preliminary proceeding. The Juvenile Court, under R. C. 2151.26(A)(2), need only make a determination as to probable cause. This issue is not even disputed by Carmichael. A reasonable extension of the failure to dispute the issue of "probable cause" is that there did exist reliable evidence on this question.

It is our conclusion that an examination of the record in this case reveals that the Juvenile Court had sufficient evidence to substantiate its conclusion that, after an investigation under R. C. 2151.26(A) (3), there were reasonable grounds to relinquish its jurisdiction and transfer the case to the Common Pleas Court.

*Judgment affirmed.*

HERBERT, CORRIGAN, STERN, W. BROWN and P. BROWN, JJ., concur.

O'NEILL, C. J., dissents.